Mr. Marlin M. Feagle Attorney for the Lake Shore Hospital Authority Post Office Box 1653 Lake City, Florida 32056-1653
Dear Mr. Feagle:
You have asked on behalf of the Lake Shore Hospital Authority substantially the following questions:
 1. May the Lake Shore Hospital Authority use its ad valorem tax revenues for medical care provided to indigent residents of Columbia County at locations outside the county?
 2. Are ad valorem tax proceeds of the Lake Shore Hospital to be used solely for the maintenance and operation of the hospital and care of the indigent at the hospital facility?
In sum, I am of the following opinion:
 Absent statutory authority, the Lake Shore Hospital Authority may not use its ad valorem taxing authority for purposes other than maintaining and operating the Lake Shore Hospital and caring for indigents at the hospital. Such a limitation would preclude the use of ad valorem tax revenues of the authority to reimburse out-of-county facilities for hospital care provided to indigent Columbia County residents, but would not affect the county's obligation to pay for such care.
Since your questions are interrelated, they will be answered together.
The Legislature has recognized that access to adequate health care is a right which should be available to all Floridians. Toward that goal, the Legislature created the "Public Medical Assistance Trust Fund" to provide a mechanism for the funding of health care services to indigent persons, "the cost of which shall be borne by the state and by hospitals which are granted the privilege of operating in this state."[1]
Section 409.2673, F.S. (1988 Supp.), creates a shared county and state program to provide inpatient hospital services, including out-of-county inpatient hospital services, to specified indigents. In the event an indigent patient, qualified to receive such services, is treated at a hospital outside his or her county of residence, the indigent patient's county of residence is responsible for reimbursing the treating hospital.[2]
Concurrently, "The Florida Health Care Responsibility Act of 1988"[3]
was created with the stated intent that the state and counties must share the responsibility to provide adequate and affordable health care to all Floridians. The act places the ultimate financial obligation for out-of-county hospital care of qualified indigent patients on the county in which the indigent patient resides.[4]
Each county is directed to reimburse participating hospitals[5]
or regional referral hospitals[6] as provided in the act for the medical care rendered to indigent patients. To provide funding for indigent and other health care services throughout the county, each county is authorized to establish a dependent special district pursuant to the provisions in Ch. 125, F.S., or by ordinance, create an independent special district.[7] If an independent special district is created, the governing board of the county appoints a district health care board as the governing board of the district.[8] Each district health care board may, if not otherwise limited by the county at the time of its creation and approval by the electorate, have the following authority:
 1. To provide and maintain in the county such health care clinics as the board determines are needed for the general welfare of the county.
 2. To provide for the health care of indigents and to provide such other health-related services for indigents, including the purchase of institutional services from any private or publicly owned medical facility, as the board determines are needed for the general welfare of the county.
 3. To allocate and provide funds for other agencies or facilities in the county which provide health benefits or health services that improve the general welfare of indigents and other county residents.
 4. To collect information and statistical data that will be helpful to the board and the county in deciding the health care needs in the county.
 5. To consult and coordinate with other agencies dedicated to health care to the end that the overlapping of services will be prevented.
 6. To govern, operate, administer, and fund, or any combination thereof, any county-owned or county-operated medical facility which is a major provider of charitable health care services for low-income persons.
 7. To assume funding for the county's share of state or federal indigent health care programs which require financial participation by the county.
 8. To lease or buy such real property and personal property and to construct such buildings as are needed to execute the foregoing powers or functions; however, such purchases may not be made or construction done unless paid for with cash on hand or secured by funds deposited in financial institutions. Nothing in this paragraph shall be construed to authorize an independent health care special district to issue bonds of any nature, nor shall it have the power to require the imposition of any bond by the governing body of the county.
 9. To employ, pay, and provide benefits for any part-time or full-time personnel needed to execute the foregoing powers and functions.[9]
Thus, the act allows the county to create an independent special district with ad valorem taxing power, if approved by the electorate, in order to fund the provision of health care for the indigent residents of the county. Such a district may assume the funding of the county's share of a program for providing indigent care, as well as providing the facilities for such care.
You state that Columbia County and the Lake Shore Hospital Authority (the authority) wish to enter into an interlocal agreement whereby the authority will levy the necessary ad valorem tax millage to administer and fund a program providing inpatient hospital services to indigent Columbia County residents. In the event the authority assumes the financial responsibility for such an indigent care program, ad valorem tax revenues of the authority would be used to reimburse out-of-county hospitals providing care for indigent Columbia County residents. You ask whether authority funds may be used to provide such reimbursement.
The Lake Shore Hospital Authority of Columbia County was created by Ch. 63-1247, Laws of Florida, with the "power generally to acquire, construct, improve, enlarge, repair, equip, operate and maintain hospitals and hospital facilities in Columbia County."[10]
The authority is specifically authorized
 [t]o furnish temporary relief to the indigent of Columbia county and study the cause of their poverty; to seek a plan for their permanent rehabilitation; generally, to assist them to support themselves whenever possible to the end that they may cease to be a charge upon the community and, instead, become useful citizens thereof; and to bury the indigent dead of Columbia county and provide cemeteries for that purpose.[11]
Section 8, Ch. 63-1247, Laws of Florida, imposed upon the Board of County Commissioners of Columbia County the duty to provide sufficient revenue for the maintenance and operation of the authority's facilities.[12] Additionally, the authority was granted the power to issue bonds for the payment of the cost of acquiring, constructing, equipping, repairing, extending, maintaining and reconstructing facilities of the authority.[13]
In 1965, however, the Legislature enacted Ch. 65-1414, Laws of Florida, providing:
 Section 1. The members of the Lake Shore hospital authority of Columbia county are authorized to request, by resolution of said hospital authority, the board of county commissioners of Columbia county to levy a tax not to exceed three (3) mills on all taxable property in the county for the purpose of maintenance and operation of the hospital and care of the indigent at the hospital. (e.s.)
 Section 2. Upon request by resolution of the Lake Shore hospital authority, the board of county commissioners of Columbia county shall levy a tax upon all the taxable property in the county for the purpose of maintenance and operation of the hospital and care of the indigent at the hospital in the amount not to exceed three (3) mills. Upon the assessment and collection of said tax, the county tax collector shall remit the moneys thereby collected to the director of the authority. (e.s.)
This office has been informed that there is only one hospital which comprises the facilities of the authority. The plain language of the special act limits the levy of the ad valorem tax for the purpose of maintaining and operating the hospital and caring for indigents at the hospital.
Generally, this statutory limitation upon the use of ad valorem tax revenues would preclude using such funds for purposes other than those enumerated.[14] A review of the legislative history of the amendments of Chs. 154 and 409, F.S., imposing upon the county the ultimate responsibility for provision of health care to its indigent residents and allowing the county to create a special district to fund such an expense, does not indicate a total revision of all laws concerning indigent health care was contemplated. These amendments of the general law, therefore, would not control over the special act creating the Lake Shore Hospital Authority.[15]
It is well settled that administrative officers and agencies have only the authority provided by law and that when there is a question as to the existence of authority, the question should be resolved against the existence of the authority.[16] Absent statutory authority, therefore, the Lake Shore Hospital Authority may not use the proceeds from the levy and collection of ad valorem taxes authorized by Ch. 65-1414, Laws of Florida, for purposes other than those enumerated in the statute.
Accordingly, it is my opinion that the ad valorem tax revenues received pursuant to Ch. 65-1414, Laws of Florida, may only be used for the maintenance and operation of authority facilities and the care of indigents at such facilities. Such a limitation would preclude using authority ad valorem tax revenues to reimburse out-of-county hospitals for care provided to indigent Columbia County residents. However, this limitation would not affect the county's responsibility to reimburse out-of-county hospitals for care provided to indigent Columbia County residents.
Sincerely,
Robert A. Butterworth Attorney General
(ls)
[1] Section 409.2662, F.S. (1988 Supp.). See also, s. 154.302, F.S. (1988 Supp.), expressing the legislative intent in passage of "The Florida Health Care Responsibility Act of 1988," Part IV, Ch. 154, F.S. (1988 Supp.).
[2] Section 154.306, F.S. (1988 Supp.).
[3] Section 154.301, F.S. (1988 Supp.).
[4] Section 154.302, F.S. (1988 Supp.). See also, s. 154.306, F.S. (1988 Supp.), placing ultimate financial responsibility for treatment received at a participating hospital or a regional referral hospital by a qualified indigent patient who is a certified resident of a county in the State of Florida upon the county of which the indigent is a resident.
[5] Section 154.304(8), F.S. (1988 Supp.), defines "Participating hospital" as "a hospital which is eligible to receive reimbursement under the provisions of this act because it has been certified by the board as having met its charity care obligation and has either: (a) A formal signed agreement with a county or counties to treat such county's indigent patients; or (b) Demonstrated to the board that at least 5 percent of its uncompensated charity care, as reported to the board, is generated by out-of-county residents."
[6] Section 154.304(10), F.S. (1988 Supp.), defines "Regional referral hospital" as "any hospital which is eligible to receive reimbursement under the provision of this act because it has met its charity care obligation and it meets the definition of teaching hospital as defined in s. 407.002."
[7] Section 154.331, F.S. (1988 Supp.).
[8] Section 154.331(1), F.S. (1988 Supp.).
[9] Section 154.331(2)(a), F.S. (1988 Supp.).
[10] Section 7, Ch. 63-1247, Laws of Florida, which also enumerates the specific powers possessed by the authority not pertinent to the questions at hand.
[11] Section 7(8), Ch. 63-1247, Laws of Florida.
[12] Section 8(2), Ch. 63-1247, Laws of Florida, appropriates to the authority for maintenance and operation of the facilities the first $20,000.00 of race track funds or pari mutuel funds accruing annually to the board of county commissioners of Columbia County under the provisions of Chs. 550 and 551, F.S.
[13] Section 9(1), Ch. 63-1247, Laws of Florida.
[14] See, Alsop v. Pierce, 19 So.2d 799 (Fla. 1944) (an express direction as to how a thing shall be done is an implied prohibition of its being done in any other manner).
[15] Cf., Floyd v. Bentley, 496 So.2d 862 (2 D.C.A.Fla., 1986), review denied 504 So.2d 767 (Fla. 1987) (effectiveness of prior, more specific act is retained unless subsequent general act is intended as overall restatement of the law on the same subject).
[16] See, State ex rel. Greenberg v. Florida State Board of Dentistry, 297 So.2d 628 (1 D.C.A.Fla., 1974), cert. dismissed,300 So.2d 900 (Fla. 1974).